COREY v. BOLTON.

(Supreme Court, Appellate Term.  March 26, 1900.)

1. WITNESS—PRIVILEGED COMMUNICATION—WAIVER—INFANTS.

The word "patient," in Code Civ. Proc. § 834, providing that a physician shall not be allowed to disclose any information which he acquired in attending a patient, and section 836, providing that section 834 shall apply to any examination of a person as a witness, "unless the provisions thereof are expressly waived on the trial or examination by * * * the patient," includes persons under disability, such as infancy, so that waiver may be made for them.

2. SAME.

The father and mother of an infant, being his natural guardians and guardians of his person, may, for him, waive the privilege given by Code Civ. Proc. § 834, that a physician shall not be allowed to disclose any information which he acquired in attending a patient, and the waiver may be made in an action to which the infant is not a party; and if the father, in an action by him for loss of the infant's services, cannot, because of his interest, waive the privilege, the mother, being present and making no objection to his waiver, will be presumed to have acquiesced therein.

3. SAME.

A guardian of an infant, not being called on to do so, need not, before making the waiver, show that the infant will not be prejudiced by waiver of the infant's privilege that a physician shall not disclose any information acquired in attending a patient.

Scott, J., dissenting.

Appeal from city court of New York, general term.

Action by George Corey against William Bolton. From a judgment for plaintiff (61 N. Y. Supp. 917), defendant appeals. Affirmed.

Argued before TRUAX, P. J., and DUGRO and SCOTT, JJ.

A. Oldrin Salter, for appellant.

Louis L. C. Benedict, for respondent.

DUGRO, J. Upon the trial of an action brought by a father to recover for the loss of the services of his infant son through an assault by the defendant, a physician who attended the boy was allowed to disclose, over defendant's objection, the information referred to in section 834 of the Code of Civil Procedure. Whether it was error to allow the disclosure is the main question upon which the result of this appeal depends. It appears that the infant was 17 years of age at the time of the trial, and that he and his mother had been witnesses for the plaintiff at the trial at a time in the day prior to the physician's testimony, and that the father upon the trial, in terms, waived the provisions of the Code above referred to, on behalf of his son. It having appeared that the boy and his mother were present in court

prior to the waiver, the presumption is that they were still in court at the time of the waiver; and, as it does not appear that they objected to the waiver, it may be assumed from the circumstances that they acquiesced in the action of the father. Section 834, Code Civ. Proc., provides that "a person duly authorized to practice physic or surgery, shall not be allowed to disclose any information which he acquired in attending a patient. * * *" And section 836 provides that section 834 shall apply to any examination of a person as a witness "unless the provisions thereof are expressly waived upon the trial or examination by * * * the patient." In order to determine the question presented, it becomes necessary—First, to ascertain whether infants and others laboring under a disability are covered by the word "patient," as used in section 836; and, second, to ascertain (if infants are included in the term) the persons through whom the waiver may be made on behalf of the infant, or, rather, whether the waiver may be made by a parent.

Concerning the first (whether the word "patient" includes a person under a disability such as infancy, lunacy, etc.) it is to be said that these persons are certainly patients, within the ordinary meaning of the term, and that no reason is apparent why the term as used in the statute should be considered in any restricted sense, or otherwise than according to its ordinary acceptation; and this acceptation would make it cover all patients, regardless of their legal status. The statute should have a broad and liberal construction, to carry out its policy. Buffalo Loan, Trust & Safe-Deposit Co. v. Knights Templar & Masonic Mut. Aid Ass'n, 126 N. Y. 455, 27 N. E. 942. Certainly one who has been a patient prior to a disability does not become any the less a patient because of the disability. If it be contended, because of the requirement of a waiver by the patient, that the makers of the statute must have contemplated by the word "patient" only persons capable of waiving in person, as distinguished from those who might waive through a representative, it may be said in answer that such a construction would be technical, far from liberal, and more apt to aid in bringing about injustice, by a suppression of the truth, than to be a benefit to those whom it is the policy of the law to protect by the statute. Through such a construction it would follow that a physician attending a patient under a disability would be absolutely incompetent, as a witness in favor of the patient, to show that which the patient is frequently otherwise unable to show; and that the object of section 834 was not absolutely to disqualify a physician from testifying. See Hoyt v. Hoyt, 112 N. Y. 493, 20 N. E. 402. A construction that the waiver cannot be made by persons under a disability would suggest that the statute is rather for the protection of those opposed to these persons, than in their favor, and does not at all accord with the views laid down in Pierson v. People, 79 N. Y. 433, where it was said of the statute that:

"In endeavoring to understand the meaning of the words used, much aid is received from a consideration of the mischief to be remedied or object to be gained by the statute. * * * Statutes are always to be so construed, if they can be, that they may have reasonable effect, agreeably to the intent of the legislature; and it is always to be presumed that the legislature has intended the most reasonable and beneficial construction, * * * and,

where any particular construction would lead to an absurd consequence, it will be presumed that some exception or qualification was intended by the legislature to avoid such consequence."

It would seem to us that a reasonable construction requires a holding that all persons, regardless of disability, are included in the word "patient," as used in section 836, and have the privilege of the privacy, and the right to waive it.

If, then, infants can waive, the manner of waiver remains to be determined. A waiver is an intentional relinquishment of a known right, and must be by one capable of binding himself (Am. & Eng. Enc. Law, 526), and so cannot be made by an infant personally, for he has a right to be protected against his own imprudence. It is not to be assumed that the statute contemplated that persons under a disability should waive personally, and therefore some representative must have been in the minds of the lawmakers as authorized to make the waiver. With respect to infant patients who are not parties to an action at the trial of which the waiver is sought to be made, it seems that the guardian of the person is the most appropriate person to make the waiver; for to this guardian is confided the rights which pertain to the person of the infant, and through him, as an agent, the state exercises functions as to the person of the infant such as the infant, if sui juris, would exercise. That is to say, this guardian, as to purely personal matters, can, within the scope of his functions, do as his ward, acting rationally, would, if sui juris. Woerner, Guardianship, 1, 2. The right of waiver given by the statute has been held to be one which pertains to the person and character of the patient, and not such as belongs to a representative of property rights. In Westover v. Insurance Co., 99 N. Y. 56, 1 N. E. 104, it was said:

"An executor or administrator does not represent the deceased for the purpose of making such a waiver. He represents him simply in reference to rights of property, and not in reference to those rights which pertain to the person and character of the testator."

This case presents a reason for holding that the guardian of the person should be preferred to the guardian of the property for the purposes of the waiver, but is not an authority, as is claimed, for the proposition that the waiver cannot be made by a proper representative. In Alberti v. Railroad Co., 118 N. Y. 77, 23 N. E. 35, an attorney was held to be a proper representative for the purpose. The guardian should, however, never be permitted to make a waiver prejudicial to the interests of his ward; but it does not seem that it is necessary that it should affirmatively appear, upon a waiver by such a guardian, that the waiver is a benefit to the infant. The guardian may be permitted to exercise his own judgment with respect to the question of prejudice to the child, and, unless called upon to do so, no showing need be made by him primarily in order to be able to make the waiver. It is quite true that ordinarily a guardian cannot bind the ward to his prejudice, but, to require interference with a guardian's actions, it must at least appear that there is reason to believe that the ward will be prejudiced. The guardian is not obliged to show that the infant will not be prej-

udiced, until properly called upon. In the present case it does not appear that the ward was in any way prejudiced by the waiver, or that the guardian could not, prior to the waiver, have shown that the ward would not be prejudiced, had it been required of him. But, from all the circumstances, it seems fair to presume that there was no prejudice. Of course, the ward would not be so bound by a guardian's waiver that he could not at any later time assert his privilege, if it appeared that the waiver had been to his prejudice; and so, as to him, the rule that the privilege, if once waived, is waived forever, does not apply, under all circumstances.

It is claimed that, as the infant was not a party to the action in which the waiver was made, the waiver was of no effect. This point is without merit. We have been unable to discover any sufficient reason for confining an infant's right to waive to any particular action, or for holding that the infant's interest must be so involved that the waiver will be to his pecuniary advantage. It may be an infant's interest, beyond any requirement for the privacy allowed by the statute, to waive, that the ends of justice be furthered. An infant is a citizen, and presumably interested in all that concerns the welfare of the state, and, among other things, ordinarily, in a disclosure of the truth, when the administration of justice requires it.

A point is made, that the father could not waive the privilege, because he was a party to the action, and interested in having the evidence of the physician. It may be a fitting answer that it does not appear that the father knew what the testimony of the physician would be, prior to the making of the waiver, and that, at most, a presumption is permissible that he knew that a disclosure would not be prejudicial to the ward, but that this is not enough to show that he knew that the testimony would be of advantage to him, or that it was of interest to him individually to make the waiver, beyond an interest that the truth be known. We believe that the mere fact that the father was plaintiff did not, under the circumstances, affect his power to make the waiver; but, even if it did, the mother, being present, should, from the circumstances, be presumed to have acquiesced in the waiver, and this would suffice to validate it, for she was joint guardian, with powers and rights equal to those of the father. Domestic Relations Law (Laws 1896, c. 272) § 51. This law places the father and mother upon strict legal equality. People v. Brooks, 35 Barb. 86; Same v. Boice, 39 Barb. 309. In New York and other states the right to waive the statutory privilege referred to existed before the passage of any statute specifically allowing a waiver. See Johnson v. Johnson, 14 Wend. 637; Morris v. Morris, 119 Ind. 341, 21 N. E. 918; Fraser v. Jennison, 42 Mich. 206, 3 N. W. 882. And the right to waiver after the death of the patient was also allowed. Staunton v. Parker, 19 Hun, 55; Insurance Co. v. Wiler, 100 Ind. 92. It seems, the courts quickly construed section 834 and similar statutes as not prohibiting a waiver, so as to give effect to the legislative intent that the statute should not be so construed as to aid in suppressing the truth, to the injury of the person whom it was sought to protect. After the enactment of section 836 the court of appeals (Westover v. In-

surance Co., 99 N. Y. 56, 1 N. E. 104) held that an executor could not make the waiver; and soon thereafter, by a Code amendment, an executor was allowed to make it under certain circumstances. It has never been decided that a waiver could not be made by a proper representative.  In 39 Cent. Law J. 114, many cases of waiver by representatives are referred to.  It was allowed to be done by an attorney in Alberti v. Railroad Co., 118 N. Y. 77, 23 N. E. 35; the court of appeals saying:

"An attorney must be deemed to so far represent a client as to be authorized in his behalf to waive the privilege, and remove the seal of secrecy to the evidence that he, in his judgment, saw fit to offer for and in behalf of his client."

In Nevada (State v. Depoister, 25 Pac. 1000) parents were allowed to make the waiver on behalf of an infant.

Whether a guardian ad litem, in a proper case, can make the waiver, it is not now necessary to determine.  The question as to the particular guardian by whom the waiver can be made in an action in which the infant is a party may not be of importance in a court having general chancery power, as such a court, having inherent power over the personal affairs of infants within its jurisdiction, is charged with the duty of attending to it that the infant's interests are in no way prejudiced.  In re Frits, 2 Paige, 374.  And, after allowance of the waiver of a guardian ad litem or the guardian of the person by such a court, no one should be heard to complain, except the infant.  In cases of waiver on behalf of a person under a disability this court has the power to investigate of its own motion to ascertain whether the infant's interests warrant a waiver; and this even though an arrest of the progress of the trial be necessitated.  In re Price, 67 N. Y. 235.

We are of the opinion that parents, being the natural guardians, and so the guardians of the person, can make the waiver.

There is, in addition to the question before referred to, one as to whether the waiver sought to be made was made on behalf of the child.  Upon this point it is sufficient to say that the words used at the trial must be considered in the light of the circumstances.  The matter before the court at the time was as to a patient's privilege, and there was no other patient than the infant.

Another point presented is that evidence as to pain was erroneously admitted.  The pain was to some extent descriptive of the injury, but in view of the statements to the jury by the court, and the instructions, it seems that this evidence did not prejudice the defendant.

The judgment is affirmed, with costs.

TRUAX, P. J., concurs.

SCOTT, J. (dissenting).  The defendant, as alleged in the complaint, assaulted and injured the plaintiff's son, an infant aged about 17 years.  The father now sues, not in his son's right, but in his own, for the loss of his son's services, and the expenses of his medical attendance.  Upon the trial the plaintiff called as a witness the phy-

sician who had attended the boy, who was permitted, notwithstanding the defendant's objection, to testify as to information he obtained as to the boy's injuries while attending and treating him. It is clear from the evidence that the boy bore to the witness the relation of a patient, and that all the information the witness obtained, and to which he testified, was acquired while attending the boy as a patient. The boy himself, who was about 17 years of age, was a witness upon the trial, and apparently was present in court when the physician testified. He was not, however, asked to waive his privilege with regard to the physician's evidence; and it is not, therefore, necessary to consider the question of the competency of a lad of that age to effectually waive the purely personal privilege of keeping closed his physician's mouth,—a waiver which could involve no surrender of any valuable right, or loss of any material advantage. The father did, however, undertake, in his son's behalf, to waive the privilege, and the physician was thereupon permitted to testify. The exception to this ruling raises the only important question presented upon appeal.

Section 834 of the Code of Civil Procedure is most explicit and peremptory. It provides that a physician "shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity." It is not easy to see how any words could have been adopted, making a physician's disqualification more absolute. The legislature has, however, prescribed certain conditions under which such testimony may be received; and, in order to uphold the ruling of the learned trial justice, it must appear that there was presented to him a condition of affairs under which the physician's evidence is declared to be admissible. At the time of the trial of this action, chapter 53, Laws 1899, had not yet gone into effect; and the only provision of law under which a physician could testify during the lifetime of the patient was that contained in section 836 of the Code of Civil Procedure, which provided that section 834 should apply to any examination of a person as a witness, "unless the provisions thereof are expressly waived upon the trial or examination by the * * * patient." An examination of some of the leading cases in this state upon the subject of receiving the testimony of physicians will serve to show how rigidly the statutory inhibition has been maintained, and with what persistency all attempts to evade it have been defeated. In Edington v. Insurance Co., 67 N. Y. 185, the court of appeals said:

"The statute is very explicit in forbidding a physician from disclosing any information received by him which is necessary to enable him to prescribe for a patient under his charge. It is a just and useful enactment, introduced to give protection to those who were in charge of physicians, from the secrets disclosed to enable them properly to prescribe for diseases of the patient. To open the door to the disclosure of secrets revealed on the sick bed, or when consulting a physician, would destroy confidence between the physician and patient, and, it is easy to see, might tend very much to prevent the advantages and benefits which flow from this confidential relationship."

In Grattan v. Insurance Co., 80 N. Y. 281, an attempt was made to introduce evidence of a physician after the death of the patient, so that, if the patient's consent alone could open his lips, they must

remain closed forever. The court refused to permit the statute to be violated; saying in reference to it, and speaking of information acquired by the physician while treating a patient:

"The information so obtained must remain inclosed with him, for he is forbidden by statute to disclose it. The word must be taken in its fullest sense. He must not tell it, not because the patient declared the communication to be confidential, or because the physician considered it so, but because the statute says that the communication to him shall not be by him disclosed or told. Any other rule will annul the statute, and permit it to be evaded. * * * The court need lay down no rule. The statute is the rule, and we are merely to inquire whether the case comes within it."

The rule of evidence referred to was exhaustively considered in Westover v. Insurance Co., 99 N. Y. 56, 1 N. E. 104. This was an action upon a life insurance policy issued to plaintiff's testator. The legislature had in 1877 adopted section 836 of the Code, but, as then enacted, it permitted a waiver only by the patient; making no provision for a waiver by any one after the patient's death. The plaintiff, as the patient's executor, and for the benefit of his estate, sought to examine his physician. If the court would in any case be disposed to mitigate or construe away the absolute prohibition of the statute, here was presented a case to induce such action. The court of appeals, however, remained unshaken in its attitude respecting the statute, saying:

"It is thus seen that clergymen, physicians, and attorneys are not only absolutely prohibited from making the disclosures mentioned, but that by an entirely new section it is provided that the seal of the law placed upon such disclosures can be removed only by the express waiver of the person mentioned. There does not seem to be left any room for construction. The sections are absolute and unqualified. These provisions of law are founded upon the public policy, and, in all cases where they apply, the seal of the law must forever remain, until it is removed by the person confessing or the patient or the client. * * * Without further discussion or citation of authorities, we think the statute admits of no other construction than that, where the evidence comes within the prohibition of the statute, its reception, if objected to, can be justified only when the patient, penitent, or client, as the case may be, waives the protection the statute gives him."

In Renihan v. Dennin, 103 N. Y. 573, 9 N. E. 320, which involved the validity of a will, the court of appeals reiterated its ruling as to the impossibility of receiving a physician's testimony at all after the patient's death; recognizing and commenting upon the inconvenience of the rule in testamentary cases and in actions upon life insurance policies. The decision in this case in 1886, following the Westover Case in 1885, doubtless led to the amendment of section 836 in 1892, permitting the waiver to be made in certain cases by specified personal representatives of a decedent. These cases, and numerous others that might be cited, serve to demonstrate the jealous care with which the courts of this state have enforced the letter of the statute, leaving to the legislature the determination of the circumstances under which a physician's evidence may be received; never by any chance relaxing the strictest rule of exclusion within the language of the statute, save in a single instance, when, in a criminal case, a physician who had attended a murdered man was

permitted to testify against his murderer. Pierson v. People, 79 N. Y. 424. As was pointed out in Grattan v. Insurance Co., supra, this exception to the general rule was recognized as one proper to be made, in accordance with the general principle which makes the safety of the citizen the paramount law of the land. It furnishes no argument for a widening of the rule in civil actions. The statute makes no provision for a waiver in behalf of an infant by a parent or guardian, and no such waiver can be effectively made unless there be something in the relation of a parent to his child, or a guardian to his ward, which implies the authority to act for the child or ward in making such a waiver. A father is for certain purposes the natural guardian of his son's person, but the power and authority, even over the person, are far from being unlimited. The fundamental idea underlying all guardianships is that the state owes to the infant the duty of protection, and the guardian is but the agent or instrument of the state in fulfilling that duty. The relation of a guardian to his ward—even that of a natural guardian —is created solely for the benefit of the ward, and not at all for the benefit of the guardian. It implies the possession by the guardian of power to do that which will be beneficial to the ward, but carries with it no implication of power to do anything by virtue of the relation of guardian which will benefit the guardian alone in his individual capacity. In other words, a man cannot do an act as guardian which he could not do if he were not guardian, if the result of that act will be for his own benefit alone. The office of guardian carries no such power with it. If this was the son's action for damages, and his attorney or his guardian ad litem sought to waive the privilege in his behalf, and for his benefit, a different question would be presented, which it is not necessary to determine here. The action is not the son's, but the father's. It is prosecuted by the father, not in his son's right, but in his own; and its fruits are to be enjoyed by him alone, without any legal right to participation therein by the son. So far as this action is concerned, he is not his son's guardian, and stands towards him in no other or better position than a stranger. In fact, he stands in precisely the same position as would a master to whom the boy had been indentured, and it would scarcely be seriously contended in an action by such a master for loss of the services of his apprentice that the master could, under the statute, take the boy's place, to waive the privilege. It may be that the plaintiff will be inconvenienced by losing the testimony of the physician, but that argument cannot be allowed to defeat the operation of a plain and peremptory statutory disqualification. The plaintiffs in Westover v. Insurance Co. and other cases above cited were at least as much inconvenienced. Much greater inconvenience would be likely to result if we were to attempt by strained and forced construction to extend the exceptions to the prohibition of the statute beyond the strict letter of the law; for, as was said in Balguy v. Broadhurst, 1 Sim. (N. S.) 111, "I am sure that it is most inconvenient to have a rule laid down, and the courts struggling to avoid it." That the defendant was entitled to object to the admission of the evidence is decided in

the Westover Case, supra. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.